**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LEE TRANSERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | Jury Demand |
| CENTRAL MUTUAL INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Lee TranServices, Inc. ("Lee") files this Complaint against Defendant Central Mutual Insurance Company ("Central Mutual") and in support thereof states as follows:

**INTRODUCTION**

1.      Lee brings this action against Central Mutual to vindicate its right to coverage under the commercial liability insurance policies issued by Central Mutual for defense costs and indemnity costs Lee has or will incur in connection with a lawsuit filed against Lee in the 159th Judicial District Court of Angelina County, Texas, styled *Vulcan Materials Company, et al. v. Lee TranServices, Inc.*, Cause No. CV-00019-18-01 (the "Underlying Lawsuit").

**PARTIES**

2.      Plaintiff Lee is a corporation organized under the laws of the State of Texas with a principal place of business in Lufkin, Texas.

3.      Upon information and belief, Defendant Central Mutual is organized under the laws of the State of Ohio and maintains a principal place of business in Van Wert, Ohio.  Central Mutual is an insurance company licensed to do business in the State of Texas.  Central Mutual has designated Corporate Creations Network Inc. as its agent for service of process.  Corporate

Creations Network Inc. is located at 5444 Westheimer Road, Suite 1000, Houston, Texas 77056-5318.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over these parties and this dispute pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, exclusive of interests and costs.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## FACTS

### The Insurance Policy

5.    Lee is a named insured under the following general liability insurance policies issued by Central Mutual (collectively, the "Policies"):

    (a)    Primary CGL Policy No. CLP 9750933, covering the period from December 31, 2014 to December 31, 2015 (the "Primary CGL Policy"); and

    (b)    Umbrella Policy No. CXS 9750933, covering the period from December 31, 2014 to December 31, 2017 (the "Umbrella Policy").

6.    The Primary CGL Policy provides that Central Mutual will pay those sums that Lee becomes legally obligated to pay as damages because of "bodily injury" caused by an occurrence, subject to the Primary CGL Policy's $1 million per occurrence limit of liability.

7.    The Umbrella Policy provides that Central Mutual will pay on behalf of Lee the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" caused by an occurrence, subject to the Umbrella Policy's $4 million per occurrence limit of liability.

8.    The Policies further provide that Central Mutual has the "right and duty to defend" Lee against any "suit" seeking damages for "bodily injury."

9.    Central Mutual's obligation to defend Lee is in addition to, and not subject to, the limits of liability provided in the Policies.

10.     The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## The Underlying Lawsuit

11.     Lee provides transportation compliance and risk management services.

12.     On July 13, 2012, Lee entered into a General Services Agreement (the "Agreement") with Vulcan Materials Company and Statewide Transport, LLC (collectively, "Vulcan").

13.     Pursuant to the Agreement, Lee agreed to perform various services for Vulcan, which are described in the Driver Qualification, Driver Log Audit, Background and Motor Vehicle Report, and Drug and Alcohol Addendums to the Agreement.  These services include reviewing motor vehicle reports for potential drivers to determine Department of Transportation compliance and performing criminal background checks on potential drivers.

14.     Pursuant to the Agreement, Lee agreed to "indemnify and hold Vulcan harmless of and from any and all liability (including, without limitations, any attorney's fees or costs that Vulcan may incur in regard to defending itself against any third party claim or action) resulting from the breach by [Lee] of this Agreement or the act of commission or omission of any Representative of [Lee], including but not limited to, acts of commission or omission deemed to be willful or negligent."

15.     On September 15, 2015, Vulcan requested that Lee perform a background check on Richard Anthony Damond.

16.     On September 29, 2015, Lee returned a background check report that identified a Driving While Intoxicated misdemeanor charge with an offense date of November 18, 2009.

17.     In its petition, Vulcan alleged that Lee failed to act with reasonable care when performing its background check on Damond, which resulted in the failure to disclose multiple probation violations, positive tests for marijuana and alcohol, and Damond's arrest after failing a drug test and an alcohol test during probation.

18.     Vulcan subsequently hired Damond to transport materials for the company.

19.     On October 12, 2015, Damond was involved in an automobile accident with Mary Banks Humphrey in Jefferson County, Texas while transporting materials for Vulcan.  As a result of the accident, Ms. Humphrey became a quadriplegic.

20.     Ms. Humphrey, along with her husband Derrick Humphrey, sued Damond and Vulcan, among others, for her bodily injuries in a case captioned *Mary Banks Humphrey, et al. v. Richard Anthony Damond, et al.*

21.     On December 12, 2016, Vulcan sent a letter to Lee demanding indemnification. Lee rejected the request.

22.     On May 3, 2017, Vulcan reached a settlement of Ms. Humphrey's claims.

23.     On January 19, 2018, Vulcan filed the Underlying Lawsuit against Lee.  Vulcan alleged causes of action for breaches of contract, indemnification, fraudulent inducement to contract, negligence/negligent misrepresentation, and breach of fiduciary duty.

24.     In its suit, Vulcan sought the damages paid to Ms. Humphrey for her bodily injuries.

25.     The Underlying Lawsuit is a "suit" seeking damages because of "bodily injury" caused by an "occurrence" that occurred during the applicable policy periods under the Polices.

**Central Mutual's Reservation of Rights**

26.     Lee timely notified Central Mutual of the Underlying Lawsuit.

27.     In that notice, Lee requested that Central Mutual defend and indemnify Lee against the Underlying Lawsuit.

28.     On March 14, 2018, Central Mutual acknowledged receipt of the notice and agreed to provide a defense to Lee in the Underlying Lawsuit subject to a general reservation of rights.

29.     On August 9, 2019, after Vulcan amended its petition to add a claim for "negligence/negligent misrepresentation," Central Mutual supplemented its initial reservation of rights letter to address the addition of the negligent misrepresentation claim.  In the August 9, 2019 letter, Central Mutual advised Lee that "the additional cause of action asserted by Vulcan does not implicate any policy provisions or exclusions not previously set out in the original letter."  Central further advised Lee that "[n]egligent misrepresentation may constitute an occurrence."

30.     Central Mutual concluded at that time that it would continue to defend the Underlying Lawsuit.

### Final Judgment in the Underlying Lawsuit

31.     On September 12, 2019, the jury in the Underlying Lawsuit entered a verdict against Lee and in favor of Vulcan, finding that Lee was liable to Vulcan in the amount of $3,875,000 for the bodily injuries suffered by Ms. Humphrey.

32.     The jury's finding of liability was based on Vulcan's claims of negligence, negligent misrepresentation, and breach of fiduciary duty.

33.     With respect to the negligence claim, the jury made a comparative causation finding, apportioning 30 percent of the fault for Ms. Humphrey's injuries to Lee.

34.     The jury found that Lee was not liable for failure to comply with the Agreement.

35.     In a letter dated November 25, 2019, the court advised the parties that after considering various post-verdict motions filed by the parties, the court would not reduce the

damages award based on the comparative causation finding with respect to the negligence claim because the jury did not assign comparative fault as to negligent misrepresentation or breach of fiduciary duty.  The court noted that had negligence "been the only liability finding, the $3,875,000 damage award would have been reduced by 70% due to the comparative causation finding."

36.     On December 5, 2019, the court entered a Final Judgment in favor of Vulcan in an amount of $3,875,000 plus court costs and pre- and post-judgment interest based on the jury verdict.

37.     Lee is currently appealing the Final Judgment.

### Central Mutual's Failure to Honor Its Coverage Obligations

38.     On December 17, 2019, while Lee was preparing its appeal, Central Mutual revoked its defense and disclaimed its indemnity obligations for the Underlying Lawsuit.

39.     Central Mutual asserted, incorrectly, that because Vulcan "decided to obtain a judgment based on claims that are not covered under the CGL Policy," Central Mutual has no further obligations to Lee with respect to the Underlying Lawsuit, and would not be responsible for any costs associated with an appeal of the Final Judgment.

40.     Both of these statements were false.  Vulcan did not obtain a judgment on only uncovered claims, and even if it had, Texas law does not permit Central Mutual to revoke its defense obligations.

41.     In its December 17, 2019 letter, Central Mutual further falsely stated that the court had entered judgment only on the negligent misrepresentation claims and breach of fiduciary duty claims.  In fact, the judgment makes no such distinction and does not vacate or otherwise limit the jury's findings of liability for negligence.

42.     Despite advising Lee on August 9, 2019 that Vulcan's claim for negligent misrepresentation "may constitute an occurrence," Central Mutual falsely represented in its December 17, 2019 letter that it had previously informed Lee that "coverage would not exist for negligent misrepresentation and breach of fiduciary duty because neither constitutes an occurrence."

43.     To be clear: At no time before Central Mutual assumed Lee's defense in the Underlying Lawsuit, or at any time during Central Mutual's defense of Lee in the Underlying Lawsuit, did Central Mutual ever reserve its right to deny coverage on the theory that negligent misrepresentation does not constitute an occurrence.  The first time Central Mutual informed Lee of this coverage defense was in Central Mutual's December 17, 2019 denial letter, after judgment had been entered in the Underlying Lawsuit.

44.     Lee is appealing the Final Judgment in the Underlying Lawsuit.

45.     Lee has incurred and/or will incur costs in connection with the appeal, including defense costs and the costs of any appeal bonds.

46.     Further, if the Final Judgment in the Underlying Lawsuit is not vacated, Lee will incur significant damages satisfying that judgment.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

47.     Lee incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

48.     Insurance policies are contracts between the insurer and the policyholder.

49.     The Policies are valid and enforceable insurance contracts.

50.     Lee has paid all premiums required by the Policies.

51.     Lee has performed all of its obligations under the Policies, and any and all conditions precedent to its rights under the Policies have been satisfied or waived.

52.     Under the terms of the Policies, Central Mutual contracted to defend and indemnify Lee in any "suit" seeking damages because of "bodily injury" caused by an "occurrence" during the applicable policy periods.

53.     The Underlying Lawsuit is a covered lawsuit seeking damages because of "bodily injury" caused by an "occurrence" during the applicable policy periods, triggering Central Mutual's defense obligation under the Policies.

54.     The Final Judgment entered in the Underlying Lawsuit is covered as damages because of "bodily injury" caused by an "occurrence" during the applicable policy periods, triggering Central Mutual's indemnity obligation under the Policies.

55.     Alternatively, Central Mutual failed to specifically reserve its right to deny coverage on the theory that negligent misrepresentation did not constitute an occurrence – and in fact affirmatively told Lee that "negligent misrepresentation may constitute an occurrence" – and its failure to reserve its rights to assert such a defense estops Central Mutual from avoiding its coverage obligations on this basis (or waives its right to do so).

56.     Central Mutual has breached the Policies by failing and/or refusing to indemnify Lee for the Final Judgment in the Underlying Lawsuit, and by withdrawing its defense of Lee.

57.     No exclusions, conditions, or other provisions in the Policies excuse Central Mutual's non-performance.

58.     Lee has not otherwise excused Central Mutual's non-performance.

59.     As a result of Central Mutual's breach, Lee has been denied the benefits of insurance coverage to which it is entitled as an insured under the Policies.

60.     Lee has suffered, and will continue to suffer, actual damages, including the defense-related fees and expenses it has been forced to incur, the cost of any appeal bond, any judgment it is ultimately required to pay, and the costs of pursuing its rights under the Policies.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – 28 U.S.C. § 2201 *et seq.*)**

61.     Lee incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

62.     The Policies are valid and enforceable insurance contracts.

63.     Lee has paid all premiums required by the Policies.

64.     Lee has performed all of its obligations under the Policies, and any and all conditions precedent to its rights under the Policies have been satisfied or waived.

65.     The Underlying Lawsuit is a covered lawsuit seeking damages because of "bodily injury" caused by an "occurrence" during the applicable policy periods, triggering Central Mutual's defense obligation under the Policies.

66.     The Final Judgment entered in the Underlying Lawsuit is covered as damages because of "bodily injury" caused by an "occurrence" during the applicable policy periods, triggering Central Mutual's indemnity obligation under the Policies.

67.     Central Mutual has an obligation to indemnify Lee for the Final Judgment in the Underlying Lawsuit, and to defend Lee in the Underlying Lawsuit.

68.     Alternatively, Central Mutual failed to specifically reserve its right to deny coverage on the theory that negligent misrepresentation did not constitute an occurrence – and in fact affirmatively told Lee that "negligent misrepresentation may constitute an occurrence" – and its failure to reserve its rights to assert such a defense estops Central Mutual from avoiding its coverage obligations on this basis (or waives its right to do so).

69.     In its August 9, 2019 letter, Central Mutual advised Lee that "[n]egligent misrepresentation may constitute an occurrence."

70.     In the August 9, 2019 letter, Central Mutual further advised Lee that "the additional cause of action asserted by Vulcan does not implicate any policy provisions or exclusions not previously set out in the original letter."

71.     Central Mutual never reserved its right to deny coverage on the theory that negligent misrepresentation did not constitute an occurrence.

72.     Because Central Mutual failed to reserve its right to deny coverage for negligent misrepresentation, Central Mutual is therefore estopped from asserting defenses to coverage with respect to Vulcan's negligent misrepresentation claim (or has waived its right to do so).

73.     An actual, justiciable controversy exists between Lee and Central Mutual as to the following issues:

      (a)    Central Mutual's continuing obligation to defend Lee in the Underlying Lawsuit;

      (b)    Central Mutual's obligation to indemnify Lee for the Final Judgment; and

      (c)    Whether Central Mutual is estopped from asserting defenses to coverage with respect to Vulcan's negligent misrepresentation claim.

74.     Lee seeks a declaration that Central Mutual has a continuing obligation to defend Lee in the Underlying Lawsuit, and to indemnify Lee for the Final Judgment, and that Central Mutual is estopped from asserting defenses to coverage with respect to Vulcan's negligent misrepresentation claim (or has waived its right to do so).

## THIRD CAUSE OF ACTION
### (TEX. INS. CODE § 541.051)

75.     Lee incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

76.     By the conduct described herein, Central Mutual violated TEX. INS. CODE § 541.051(1)(a)-(b), which provides that it is an unfair or deceptive act or practice in the business of insurance to make, issue, or circulate a statement misrepresenting the terms of an insurance policy, or the benefits or advantages promised by an insurance policy.

77.     Central Mutual misrepresented the terms of the Policies and the coverage they provide for Vulcan's cause of action for negligent misrepresentation.

78.     In its August 9, 2019 reservation of rights letter, Central Mutual represented to Lee that "[n]egligent misrepresentation may constitute an occurrence."  In that letter, Central Mutual further represented to Lee that "the additional cause of action asserted by Vulcan does not implicate any policy provisions or exclusions not previously set out in the original letter."

79.     However, in its December 17, 2019 denial letter, Central Mutual falsely stated that Central Mutual had reserved its right to deny coverage on the theory that "coverage would not exist for negligent misrepresentation and breach of fiduciary duty because neither constitutes an occurrence."

80.     Contrary to the representation in its December 17, 2019 denial letter, Central Mutual never reserved its right to assert that negligent misrepresentation did not constitute an occurrence.

81.     Further, on December 17, 2019, Central Mutual falsely asserted that the Policies do not provide coverage for claims of negligent misrepresentation.

82.     In fact, the Policies unambiguously cover causes of action for negligent misrepresentation.

83.     Central Mutual's violations have caused, and will continue to cause, damages to Lee, and Lee seeks to recover its damages for this conduct.

## FOURTH CAUSE OF ACTION
### (TEX. INS. CODE § 541.060)

84.     Lee incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

85.     The conduct of Central Mutual, including its investigating, processing, and delaying or refusing payment of Lee losses, constitutes unfair settlement practices in the business of insurance prohibited by TEX. INS. CODE § 541.060.

86.     Central Mutual violated TEX. INS. CODE § 541.060 in the following particulars, among others:

> (a)     By misrepresenting to Lee a material fact or policy provision relating to the coverage at issue, by misrepresenting the scope of coverage, and by misrepresenting the terms of its reservation of rights;

> (b)     By failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Lee claim after liability became reasonably clear, by erroneously withdrawing its defense of the Underlying Lawsuit, and by disclaiming its duty to indemnify after final judgment had been entered in the Underlying Lawsuit;

> (c)     By failing to promptly provide to Lee a reasonable explanation of the basis for Central Mutual's refusal to pay the claim; and

> (d)     By failing to submit a reservation of rights to Lee with respect to coverage under the Policies for the negligent misrepresentation cause of action.

87.     Central Mutual's violations violations have caused, and will continue to cause, damages to Lee, and Lee seeks to recover its damages for this conduct.

## FIFTH CAUSE OF ACTION
### (TEX. INS. CODE § 542.060)

88.     Lee incorporates all allegations in the foregoing paragraphs by reference as if set forth fully herein.

89.     Texas Insurance Code Chapter 542 requires an insurer to promptly acknowledge, investigate, and pay claims.

90.     Lee timely notified Central Mutual of the Underlying Lawsuit and provided all information necessary for Lee to provide a defense.

91.     Nonetheless, Central Mutual has refused to pay defense-related fees on appeal, refused to fund the necessary appeal bonds, and refused to indemnify Lee for the Final Judgment in the Underlying Lawsuit.

92.     Lee has suffered damages in the form of the costs, attorneys' fees, and expenses incurred to appeal the Final Judgment in the Underlying Lawsuit.

93.     Central Mutual's wrongful refusal to pay the defense-related fees and expenses in a timely manner constitutes a violation of Section 542.060 of the Texas Insurance Code.

94.     Accordingly, Central Mutual is liable for the full amount of the claim plus interest, in addition to eighteen percent per annum statutory penalty interest on the amount of the claim, together with reasonable attorneys' fees and costs incurred in pursuing this insurance claim.

## PRAYER FOR RELIEF

WHEREFORE, Lee TranServices, by counsel, requests judgment against Central Mutual and in favor of Lee TranServices for:

(i)     compensatory damages for breach of the Policies in an amount to be determined at trial but exceeding $75,000, including defense costs and expenses incurred in connection with the Underlying Lawsuit and any judgment Lee TranServices may ultimately be required to pay;

(ii)    a declaration that Central Mutual has a continuing duty to defend Lee TranServices and indemnify Lee TranServices against any judgment pursuant to the terms of the Policies;

(iii)   a declaration that Central Mutual is estopped from asserting defenses to coverage with respect to Vulcan's negligent misrepresentation claim (or has waived its right to do so);

(iv)    statutory penalty interest at the rate of eighteen percent (18%) per year, pursuant to TEX. INS. CODE §542.060;

- 13 -

(v)      multiple damages as a result of Central Mutual's knowing violations of TEX. INS. CODE §541.001 *et seq.*;

(vi)     punitive damages for Central Mutual's malicious conduct and conscious indifference to the rights and welfare of Lee TranServices;

(vii)    all reasonable and necessary attorney's fees and expenses incurred by Lee TranServices in this matter;

(viii)   all costs incurred to pursue its coverage rights, including its costs, attorneys' fees, and expenses incurred in prosecuting this litigation; and

(ix)     pre-judgment and post-judgment interest at the maximum allowable rate.

## JURY DEMAND

Lee hereby demands a trial by jury as to all issues so triable.

Dated:  January 13, 2020        Respectfully submitted,

**REED SMITH LLP**

By:  */s/ J. James Cooper*

REED SMITH LLP

J. James Cooper
Tex. I.D. No. 04780010
jcooper@reedsmith.com
811 Main Street, Suite 1700
Houston, Texas 77002
Telephone: 713.469.3800
Facsimile: 713.469.3899

Dominic I. Rupprecht (*pro hac vice forthcoming*)
drupprecht@reedsmith.com
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone: 412.288.3367
Facsimile: 412.288.3063

SKELTON SLUSHER BARNHILL WATKINS
WELLS PLLC

Brent L. Watkins
Tex. I.D. No. 24033312
bwatkins@skeltonslusher.com
1616 South Chestnut
Lufkin, Texas 75901
Telephone: 936.229.3428
Facsimile: 936.632.6545

*Attorneys for Plaintiff Lee TranServices, Inc.*